NATHAN MYRICK *vs.* DANIEL F. BRAWLEY and another, impleaded, etc.

May 25, 1885.

Constitutional Law—Obligation of Contracts—Repeal of Ferry Franchise.—Where the legislature grants a franchise, and in the same act imposes on the grantee certain duties, and reserves the power to repeal the act in case the grantee fail to perform those duties, it may, in case he does so fail, repeal the act without a previous judicial determination that he had so failed. Whether he had failed, so that the repeal was effectual, is a question for the courts.

By Sp. Laws 1876, *c.* 132, the defendant Daniel F. Brawley was granted a special ferry franchise for the Red river, at St. Vincent, upon the conditions stated in the opinion. This act of the legislature was repealed by Sp. Laws 1881, *c.* 364, approved February 24, 1881. On May 20, 1879, defendant Brawley assigned to plaintiff one-half interest in the ferry franchise. In April, 1881, the county commissioners of Kittson county, under the authority of Sp. Laws 1881, *c.* 364, granted to defendant Brawley an exclusive right and license to maintain and operate a ferry across the Red river, at St. Vincent, which right and license were exercised by the defendants to the exclusion of the plaintiff.

Plaintiff, alleging that the defendant Brawley, for the purpose of cheating and defrauding the plaintiff, and by false and fraudulent representations, procured the passage of the repealing act of 1881, brought this action in the district court for Ramsey county to have the repealing act declared null and void, and asking for an accounting and division of the receipts and profits derived from the maintenance and operation of the ferry under the license granted by the county commissioners.

The action was tried by *Brill*, J., who found, among other facts, that no ferry was kept or maintained during 1877 and the greater part of 1878, and, as a conclusion of law, held the repealing act of 1881 valid, and directed judgment for defendants, which was entered and the plaintiff appealed.

*William Barrett* and *E. F. Lane,* for appellant, cited *McRoberts* v. *Washburne,* 10 Minn. 8, (23;) *Willis* v. *Jelineck,* 27 Minn. 18; *Com.* v. *New Bedford Bridge,* 2 Gray, 339; *Com.* v. *Essex Co.,* 13 Gray, 239; *Crease* v. *Babcock,* 23 Pick. 334; *Flint, etc., Plank-road Co.* v. *Woodhull,* 25 Mich. 99; *Detroit* v. *Detroit & H. Plank-road Co.,* 43 Mich. 147; *Miners' Bank* v. *U. S.,* 1 Greene, (Ia.) 553; *Erie, etc., R. Co.* v. *Casey,* 26 Pa. St. 287.

*J. M. Gilman,* for respondents.

GILFILLAN, C. J.   By Sp. Laws 1876, c. 132, the legislature of this state granted to defendant Brawley, his heirs, executors, administrators, or assigns, the exclusive right and privilege, for a period of 10 years, of keeping and maintaining a ferry across the Red river at St. Vincent, in the county of Pembina.   Section 2 of the act provides that "the said Daniel F. Brawley shall, within six months after the passage of this act, place and maintain upon such ferry such good and sufficient boat or boats as may be necessary to carry across said river all teams, horses, cattle, and other property, and for the accommodation of foot passengers, and shall at all times give ready and prompt attention to passengers and teams on all occasions, and at all hours of the day and night."   Section 7 reads: "If the said Daniel F. Brawley, his heirs or assigns, fail to fulfil any of the conditions of this act, then the legislature may, at any time, alter, amend, or repeal the same."   Brawley transferred a one-half interest in the ferry to plaintiff.   As found by the court below, the conditions of section 2 were not complied with.   During the year 1877, and up to October in the year 1878, no ferry at all was maintained.   In 1879 and 1880 it was maintained, but not in the manner, as affecting the safety and convenience of the public, required by section 2.   Upon these facts being represented to the legislature, it, in 1881, (Sp. Laws 1881, c. 364,) repealed the act of 1876.

Against the act of 1881 the plaintiff claims that it is unconstitutional and void, because it impairs the obligation of a contract; because it was the exercise of judicial power by the legislature; because it was a taking of private property without due process of law, and without making just compensation.

That the legislature impaired the obligation of the contract by

doing precisely what the contract provided that it might do, is absurd. As to its being a taking of the property or franchise, it is enough to say that the right and power to do that, as reserved in the legislature in the event specified, limited and controlled the tenure by which the grantee took and held the property or franchise, just as in a private grant does a clause for forfeiture and re-entry for breach of condition. In the latter case no one would think of charging the grantor with invading the rights or property of the grantee by a re-entry to enforce a forfeiture, if one had in fact been incurred.

The insertion in legislative grants, like the one in question, of express provisions for forfeiture in case of non-user or misuser, is not uncommon, and it can hardly be questioned that it is competent for the legislature, which is the law-making power as well as one of the contracting parties, to provide in the grant a mode of enforcing the forfeiture, either by repeal of the act making the grant or otherwise; and there can be as little doubt that the forfeiture will be effectually enforced by resort to the stipulated mode, provided the event on which it is to be resorted to has arisen. Where the right reserved to recall the grant depends on the happening of a contingent event, the existence of the fact at the time of the recall must, of course, be a matter for judicial investigation. Whether the re-entry by a private grantor perfects a forfeiture must depend on the fact of condition broken, and that must be ascertained by the judiciary; but in no case where the forfeiture may be enforced by act of the grantor, need he secure, before he enforces it, a judicial determination that the fact upon which the right to forfeit depends, exists. The courts will decide upon the effect of his act subsequently. But neither does the legislature when it exercises a reserved right to repeal, nor the private grantor when he exercises a reserved right of re-entry, perform any judicial function. The act of neither assumes to determine finally the rights of the parties as affected by the act to enforce the forfeiture. That is necessarily and inherently a judicial question, which only the judiciary can decide.

The foregoing propositions are sustained by the following cases, and we find no decision to the contrary. *Erie & N. E. R. Co.* v. *Casey*, 26 Pa. St. 287; *Crease* v. *Babcock*, 23 Pick. 334; *McLaren*

v. *Pennington,* 1 Paige, 102; *Ferguson* v. *Miners', etc., Bank,* 35 Tenn.
609; *Read* v. *Frankfort Bank,* 23 Me. 318; *Miners' Bank* v. *U. S.,* 1
Greene, (Iowa,) 553. In this case, the event (as determined by the
court) upon which the right to repeal was reserved having arisen, the
repeal was effectual to terminate the grant.

Judgment affirmed.